IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED
MAR 3 1 2003
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| JOSE JESUS VASQUEZ-MONTERO, § <br> Petitioner, § <br> § <br> VS. § <br> § CIVIL ACTION NO. B-02-209 <br> § <br> UNITED STATES OF AMERICA, § <br> Respondent. § | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the court is petitioner, Jose Jesus Vasquez-Montero's ("Vasquez") Motion to Vacate or Set Aside Sentence (Docket No. 1) filed on October 30, 2002, pursuant to 28 U.S.C. §2255. For the reasons stated below it is recommended that the motion be denied.

### I. Factual Background

On December 15, 2000, in Cr. No. B-00-378, Vasquez was charged with violation of 8 U.S.C. §1326(a) & (b)[1]. Vasquez plead guilty to illegal reentry into the United States following deportation, after previous conviction for an aggravated felony. The felony consisted of a 1984 state conviction for involuntary manslaughter.[2] As a result of a Pre-sentence Investigation Report, Vasquez was found to have a Criminal History Category of VI, Total Offense Level of 21[3], and Guideline Range of 77 to 96 months, based on the 2000 Sentencing Guidelines. Vasquez was sentenced to 77 months in prison. Vasquez appealed his conviction, which was

---

[1] (b) Criminal penalties for reentry of certain removed aliens
    (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both;

[2] The conviction involved the death of another caused by Vasquez while he was driving under the influence of alcohol.

[3] Consisting of a Base Level Offense of 8 and a 16 Level Increase under the 2000 U.S.S.G. §2L1.2 (b)(1)(A) for having a conviction for an "aggravated felony".

dismissed as frivolous by the Fifth Circuit, and the judgment became final on January 8, 2002.

## II. Claims of the Parties

Vasquez argues that since the date of his sentence, the Sentencing Guidelines have been reduced for his prior offense. Vasquez claims that an amendment to the United States Sentencing Guidelines removed DWI as a crime of violence. As a result of this change, Vasquez contends, that a conviction for involuntary manslaughter based on DWI, should no longer characterized as a crime of violence as well.

The Government argues that DWI was removed as crime of violence as the result of a decision by the Fifth Circuit and that it is distinguishable from involuntary manslaughter, which is a crime of violence, citing *Omar v. I.N.S.*, 298 F.3d 710, 717-20 (8th Cir. 2002) (Criminal vehicular homicide, like involuntary manslaughter, by its nature inherently involves a substantial risk that physical force may be used against a person in its commission and is a crime of violence).

## III. Analysis

### A. Motion Pursuant to §2255 is Timely

Under 28 U.S.C. §2255, a petitioner must file his motion within the one year period of limitations, imposed by the Antiterrorism and Effective Death Penalty Act of 1996[4] (AEDPA). Vasquez's judgment became final on January 8, 2002, while the instant motion was filed October 30, 2002, well within the period of limitations.

### B. Basis for Jurisdiction

The basis for a motion made pursuant to §2255 requires a showing that a prisoner in

---

[4]Pub.L. 104-132, Title I, §105, 110 Stat. 1220.

custody, under a sentence of a court, is claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States. In addition, a defendant is entitled to re-litigate an issue where there has been intervening change in the law. The claim need not be of constitutional dimension in order to be cognizable, but must be a fundamental defect which inherently results in complete miscarriage of justice. *Chapman v. U.S.*, 547 F.2d 1240 (5th Cir. 1977) (cert. denied 97 S.Ct. 1705, 431 U.S. 908, 52 L.Ed.2d 393. However, technical application or misapplication of the Sentencing Guidelines does not raise a constitutional issue cognizable under §2255. *U.S. v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994).

In this case, Vasquez is a prisoner in custody who claims the right to be released on the ground that there has been an underlying change in the law with regard to his sentence. There has been an amendment to the Sentencing Guidelines, as well as a change in the case law (as discussed below, DWI was removed as a crime of violence pursuant to *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001)). Vasquez does not argue that the sentencing guidelines were misapplied at the time of his conviction and as such, jurisdiction is proper in this case.

**C. Changes in Sentence Enhancement**

Vasquez was sentenced under the 2000 Sentencing Guidelines. On November 1, 2001, the guidelines regarding sentence enhancement for the crime of unlawfully entering or remaining in the United States were changed pursuant to Amendment 632, which was not retroactive. U.S.S.G. §1B1.10 (c) provides an exclusive list of retroactive amendments which will reduce a previously imposed prison term and Amendment 632 is not one of them. The amendment was made in response to concerns that § 2L1.2 sometimes resulted in disproportionate penalties as the definition for a aggravated felony 16 level enhancement was overly broad in 8 U.S.C. §

1101(a)(43). For example, a defendant previously convicted of murder would receive the same 16-level enhancement as a defendant previously convicted of simple assault. *U.S. v. Caicedo-Cuero*, 312 F.3d 697, 709 (5th Cir. 2002). Therefore the 2001 Sentencing Guidelines separated the more serious felonies and made them subject to a 16 level increase, as demonstrated below:

>   2000 U.S.S.G. § 2L1.2 Unlawfully Entering or Remaining in the United States
>       (a) Base Offense Level: 8
>       (b) Specific Offense Characteristic
>           (1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):
>               (A) If the conviction was for an **aggravated felony**, increase by 16 levels.
>               (B) If the conviction was for (i) any other felony, or (ii) **three or more misdemeanor crimes of violence** or misdemenaor controlled substance offenses, increase by 4 levels.
>
>   2001 U.S.S.G. § 2L1.2 Unlawfully Entering or Remaining in the United States
>       (a) Base Offense Level: 8
>       (b) Specific Offense Characteristic
>           (1) Apply the Greatest:
>           If the defendant previously was deported, or unlawfully remained in the United States, after-
>               (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) **a crime of violence**; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by 16 levels;
>               (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;
>               (C) a conviction for an **aggravated felony**, increase by 8 levels;

Under the 2000 Sentencing Guidelines, Vasquez's total offense level was enhanced by 16 levels for an aggravated felony. At that time, an aggravated felony could be a crime of violence as defined in 8 U.S.C. §1101(a)(43), Subsection (F) as follows:

> "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment is at least one year;"

Under 18 U.S.C. §16 "crime of violence" means -

   (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
   (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Under the 2001 guidelines, a crime of violence for purposes of a 16 level increase, is defined differently in Application Note 1 (B)(ii):

   (I) means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

   (II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

### D. Characterization of Involuntary Manslaughter for Sentence Enhancement

At the time of Vasquez's sentencing, the Fifth Circuit had not yet determined whether involuntary manslaughter arising from a DWI was a crime of violence for purposes of a 16 level increase for an aggravated felony.

#### 1. Proper Analysis Under the 2000 Sentencing Guidelines

Under the 2000 guideline definitions and the case law precedent set by *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), the court would have employed a "state of mind analysis" to determine whether involuntary manslaughter arising from a DWI was a crime of violence. The Court in *Chapa-Garza* held that a DWI under the aggravated felony prong is not a crime of violence under the definition in 18 U.S.C. §16. The decision was predicated on the 2000 version of the guidelines. The Court employed a "state of mind analysis" in which the

mental state of the offense was compared to the definition in 18 U.S.C. §16(b). The Court reasoned that the language in Section 16(b) refers only to those offenses in which there is a substantial likelihood that the perpetrator will "intentionally" use physical force. The ordinary meaning of the word "use" requires recklessness as regards the substantial likelihood that the offender will intentionally employ force to effectuate the commission of the offense. *Chapa-Garza* at 927. The Court concluded that while the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver's errant automobile, it is clear that such force has not been intentionally "used" against the other person by the drunk driver at all, much less in order to perpetrate the crime of DWI.

### 2. Proper Analysis Under the 2001 Sentencing Guidelines

Under the 2001 guideline definitions and the case law precedent set by *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th Cir. 2003), the court would now employ a "results-oriented" analysis. To be considered a crime of violence for purposes of a 16 level increase, a two step procedure must be followed. If the state law crime in question is not one of the offenses enumerated in Application Note 1(B)(ii)(II), then it can only be a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." The specific conduct giving rise to the commission of the crime is irrelevant, as the only analysis is that of the statutory definition of the crime. *Taylor v. United States*, 495 U.S. 575, 602, 110 S. Ct. 2143, 109L.Ed.2d 607 (1990).

In *Vargas-Duran*, the Court found that a Texas conviction for "intoxication assault" was a crime of violence for purposes of a 16 level increase. In that case, the Court mandated that the proper analysis for a crime of violence for a 16 level increase requires a review of the offense's

language to determine whether it contains an element of the "use of force". The Court reasoned that because intoxication assault[5] requires proof that the offender "cause serious bodily injury to another", it necessarily encompasses a requirement that the offender use force to cause that injury. If the commission of a crime results in bodily injury or death, then force must have been used.

### 3. Vasquez's Sentence Enhancement

In this case, the Pre-Sentence Investigation Report characterized Vasquez conviction as "involuntary manslaughter". However, a review of the Texas Penal Code reveals that there is no homicide category for involuntary manslaughter. Homicide is characterized as either murder, capital murder, manslaughter, or criminally negligent homicide.[6]

In determining whether Vasquez's crime was a crime of violence, the proper analysis focuses on the crime of violence definition in the guidelines under which he was sentenced, as

---

[5] TEX. PENAL CODE ANN. §49.07 (Vernon 1994).

[6] Criminal homicide is murder, capital murder, manslaughter, or criminally negligent homicide.
TEX. PENAL CODE ANN. § 19.01(b) (Vernon 2003).

Manslaughter. A person commits an offense if he recklessly causes the death of an individual.
TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003).

Criminally Negligent Homicide. A person commits an offense if he causes the death of an individual by criminal negligence. TEX. PENAL CODE ANN. § 19.05(a) (Vernon 2003).

Definitions of Culpable Mental States.
(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
(d) A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.
TEX. PENAL CODE ANN. § 6.03 (Vernon 2003).

Amendment 632 is not retroactive. Employing the analysis in *Chapa-Garza*, which is applicable to that particular definition, both manslaughter and criminally negligent homicide would be considered a crime of violence. It does not matter that these crimes arose from a DWI, as the underlying conduct or circumstances surrounding the commission of the crime is not relevant according to *Taylor v. United States*, discussed above. The only inquiry is that of the mental state of the crime charged. Manslaughter requires that a person recklessly cause the death of another. Criminal Negligence requires that a person cause the death of another because of his failure to perceive a substantial and unjustifiable risk that he ought to have been aware of.

*Chapa-Garza* noted that the "use of force" phrase in the 16(b) definition of a crime of violence requires recklessness as regards the substantial likelihood that the offender will employ force to effectuate the commission of the offense. This definition requires that physical force be applied in the course of committing the offense. Manslaughter and criminal negligent homicide require that a person recklessly or unjustifiably use force to cause the death of another.

Although the law has since changed and *Vargas-Duran* presents a new analysis, it is one that is tied to the new definitions under the 2001 Sentencing Guidelines. As such, the "results-oriented" analysis is only proper when the underlying crime, for purposes of sentence enhancement, was characterized as a crime of violence under the 2001 Sentencing Guidelines. Although a *Vargas-Duran* approach is not suitable in this case, involuntary manslaughter would nonetheless be considered a crime of violence under it.

Under the Texas Penal Code both manslaughter and criminally negligent homicide require proof that the offender "cause the death of an individual", which necessarily requires the use of force to accomplish the offense. Similar to the bodily injury element of intoxication

assault, these offenses presuppose the use of force to effectuate the death of another. Examination of the mental state is not necessary, as the resulting death alone demonstrates the offenses' inclusion within Application Note 1 (B)(ii)(I). Therefore, involuntary manslaughter would be a crime of violence for purposes of a 16 level enhancement under the 2001 Sentencing Guidelines.

## IV. Recommendation

Vasquez's sentence was enhanced 16 levels based on his conviction for an offense that is a crime of violence under the aggravated felony prong of the 2000 guidelines. Although the guideline definitions have changed for a 16 level enhancement, as clarified by *Vargas-Duran*, Vazquez's offense of involuntary manslaughter would still considered a crime of violence for that purpose. Therefore Vasquez's sentence was not imposed in violation of the Constitution or the laws of the United States.

**IT IS RECOMMENDED** that Vasquez's Motion to Vacate or Set Aside Sentence pursuant to 28 U.S.C. § 2255 be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

    DONE at Brownsville, Texas, this 31st day of March, 2003.

                                                                  John Wm. Black
                                                              United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

| | | |
|---|---|---|
| JOSE JESUS VASQUEZ-MONTERO,<br>Petitioner, | § § § | |
| VS. | § § | CIVIL ACTION NO. B-02-209 |
| UNITED STATES OF AMERICA,<br>Respondent. | § § § | |

**ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND DISMISSING PETITION**

Before the Court is Magistrate Judge's Report and Recommendation on the above-referenced cause of action. After a de novo review of the entire file, it is the opinion of this Court that the Magistrate Judge's Report and Recommendation of March 31, 2003, should be adopted and Vasquez's motion pursuant to 28 U.S.C. §2255 be denied.

DONE in Brownsville, Texas, on this _____ day of _____, 2003.

_____
Filemon B. Vela
United States District Judge